NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2764
_____

KOLE AKINOLA,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A077-026-013)
Immigration Judge:  Honorable Margaret R. Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2013
Before:  RENDELL, ALDISERT and NYGAARD, Circuit Judges

(Opinion filed: April 05, 2013)
_____

OPINION
_____

PER CURIAM

        Kole Akinola, a native and citizen of Nigeria, petitions for review of a final order

of the Board of Immigration Appeals ("BIA" or "Board").  For the following reasons, we

will deny the petition for review.

1

After illegally entering the United States, Akinola was convicted in New Jersey of possession with intent to distribute a controlled substance (cocaine) within 1000 feet of a school, N.J. Stat. Ann. § 2C:35-7, and robbery, N.J. Stat. Ann. § 2C:15-1. The Department of Homeland Security initiated removal proceedings against Akinola, alleging that he was removable on account of, inter alia, his conviction for a crime relating to a controlled substance. 8 U.S.C. § 1182(a)(2)(A)(i)(II). Akinola filed applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"), alleging that he would be incarcerated and tortured under a law known as Decree No. 33, which permits imprisonment of criminal deportees upon their return to Nigeria.

An Immigration Judge ("IJ") concluded that Akinola's drug conviction rendered him ineligible for asylum and withholding of removal. 8 U.S.C. §§ 1158(b)(2)(A)(ii), § 1231(b)(3)(B)(ii). But the IJ granted Akinola's request for deferral of removal under the CAT, finding that it was more likely than not that Akinola would be detained upon his return and, while detained, would more likely than not be tortured. The Government appealed.

The Board sustained the appeal. The BIA observed that the case was similar to In re M-B-A-, where it held that an alien may not simply rely on the existence of Decree No. 33 and anecdotal evidence of its impact, but must additionally provide "some current evidence, or at least more meaningful historical evidence, regarding the manner of enforcement of the provisions of Decree No. 33" on similarly situated individuals. 23 I.

2

& N. Dec. 474, 479 (BIA 2002). In Akinola's case, the Board concluded that the evidence was "insufficient for this purpose" because it was "not entirely clear as to the current implementation of Decree 33 in Nigeria." Thus, the Board remanded the matter "for further proceedings consistent with this opinion and for entry of a new decision."[1]

On remand, the parties provided additional documentary evidence, including the 2009 State Department Report on Human Rights Practices in Nigeria, an Amnesty International publication, and correspondence with the Nigerian Consulate which indicated, inter alia, that Decree No. 33 "is operative Law, [and] remains recognized and enforced." After considering that new evidence, as well as the documentary material and testimony submitted during the original proceedings, the IJ denied Akinola's application for deferral of removal under the CAT. The IJ assumed, arguendo, that Akinola will be imprisoned pursuant to Decree No. 33 upon his return to Nigeria. Nevertheless, the IJ concluded that the evidence did not demonstrate that it was more likely than not that he will be tortured in prison. Although the evidence revealed "abhorrent" conditions for Nigerian prisoners, the IJ held that Akinola's "claim is based upon a chain of assumptions and a fear of what might happen, rather than adequate evidence that meets his burden" of proof for CAT relief.

---

[1] One Board member dissented, explaining that, "[w]e may prefer having more information as to the current enforcement of Decree 33, and we may even have resolved the factual dispute on its implementation differently than the [IJ], if we had independent fact finding authority. But the parties did offer evidence on this question, and the [IJ] made a finding of fact that is not clearly erroneous."

3

Akinola appealed. The BIA agreed with the IJ's conclusion that Akinola failed to meet his burden of proof for deferral of removal under the CAT. Specifically, the Board held that "although torture and other human rights abuses do often occur in Nigeria, torture of [Akinola] in particular upon return to Nigeria was not shown to be more likely than not." In support of this determination, the BIA concluded that any knowledge possessed by the Nigerian Consulate of Akinola's request for protection in the United States would not itself be likely to cause Akinola to be singled out for harm.[2] Thus, the Board dismissed Akinola's appeal.

Akinola filed a timely petition for review, seeking to challenge the denial of his application for protection under the CAT. We generally lack jurisdiction to review a final order of removal against an alien, like Akinola, who is removable for having committed a criminal offense covered in § 1182(a)(2). 8 U.S.C. § 1252(a)(2)(C). We retain jurisdiction, however, to review constitutional claims, "pure questions of law," and "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005).

---

[2] In this connection, the Board agreed with the IJ's rejection of Akinola's claim that the Government violated his confidentiality by disclosing to the Nigerian Consulate that he had applied for asylum. See 8 C.F.R. § 1208.6 (prohibiting the disclosure of information "that indicate[s] that a specific alien has applied for asylum" in the United States). Because Akinola does not meaningfully challenge this determination on appeal, we agree with the Government that the issue is waived. See Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that argument not raised in opening brief is waived).

4

Akinola complains that the Board's initial decision failed to "articulate what standard of review it was applying to reach the conclusion there was not some current evidence" in the record concerning the implementation of Decree 33. We have jurisdiction to review this claim. See Kaplun v. Att'y Gen., 602 F.3d 260, 268-69 (3d Cir. 2010) (holding that Court has jurisdiction to review whether the BIA applied the correct standard of review to the IJ's decision). The Board reviews factual findings of the IJ under the clearly erroneous standard. See 8 C.F.R. § 1003.1(d)(3)(i). Here, the Board's first decision did not indicate what standard it employed as to the facts in the course of concluding that the evidence was "insufficient" and "not entirely clear as to the current implementation of Decree 33 in Nigeria." We conclude, however, that the absence of an explicitly stated "clearly erroneous" standard was harmless and did not affect the outcome of the case. Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011). The Board's decision to remand was based on its determination that the IJ failed to apply the standards in In re M-B-A- for evaluating CAT claims. Whether the evidence was "insufficient" or "not entirely clear" enough to satisfy those standards is a question of law that the Board reviews de novo. Kaplun, 602 F.3d at 272 n.9 (stating that "the BIA possesses the authority to review de novo whether an Immigration Judge's factual findings (that are not clearly erroneous) satisfy an ultimate statutory standard . . . ."). Therefore, we reject Akinola's contention that the BIA applied an incorrect standard of review to the IJ's initial decision.

5

Akinola also argues that the IJ and the Board failed to consider relevant evidence concerning whether he established eligibility for deferral of removal under the CAT.[3] Despite the limits on our jurisdiction described above, we may review this claim. See Green, 694 F.3d at 508-09 (addressing the merits of criminal alien's claim that "the IJ and BIA committed legal error by ignoring relevant evidence in the record"). In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, "all evidence relevant to the possibility of future torture shall be considered . . . ." 8 C.F.R. § 1208.16(c)(3). Although the BIA must provide sufficient detail to allow the reviewing court to discern the basis of its decision, it is not obligated to address each piece of documentary evidence in its opinion. Toussaint v. Att'y Gen., 455 F.3d 409, 414 (3d Cir. 2006).

Here, on remand from the BIA, the IJ permitted the parties to submit additional documentary evidence. In her written decision, the IJ provided a detailed list of the evidence presented and noted that the "Court will consider the additional documentary evidence as well as the original documentary evidence and testimony submitted during the first proceeding in deciding this matter upon remand." The IJ then specifically cited

---

[3] Akinola may also be challenging the weight that the agency gave to his evidence when evaluating his eligibility for CAT relief. See Green v. Att'y Gen., 694 F.3d 503, 508 (3d Cir. 2012) (recognizing that petitioner's "real argument is *not* that relevant evidence was ignored, but rather that the IJ incorrectly weighed evidence in making factual determinations."). It is clear, however, that we lack jurisdiction over such a claim. Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 309 (3d Cir. 2011) (noting that court lacks jurisdiction to review criminal alien's disagreement with BIA's determination that his evidence is insufficient to demonstrate eligibility for CAT relief.).

6

to the 2009 country report and the Amnesty International publication in concluding that the conditions faced by Nigerian prisoners are "certainly abhorrent." Furthermore, the IJ noted that "[a]s evidence that he will more likely than not fall victim to these abuses, [Akinola] merely refers to his unsubstantiated belief that individuals . . . who are taken into custody upon deportation through the operation of Decree No. 33 are tortured." For its part, the Board acknowledged the letters from the Consulate General's Office, as well as the 2007 and 2009 versions of the country report. Notably, Akinola does not identify any evidence that was overlooked. Under these circumstances, we are convinced that the IJ and the BIA considered all relevant record evidence in rendering their decisions. Toussaint, 455 F.3d at 415 (stating that "BIA's reference to 'insufficient evidence' indicates that it weighed the evidence and found it lacking . . . .").

For the foregoing reasons, we will deny the petition for review.